UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-06887-SVW-MRW | Date | January 29, 2025 |
| Title | *Jacy Houseton et al. v. Trevor Kirk et al.* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**   ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [213]

Before the Court is Defendant Felipe Alejandre's ("Defendant") motion for summary judgment. ECF No. 189. For the following reasons, Defendant's motion is DENIED.

**I.   Factual and Procedural History**

   **A.   Factual Background**

On June 24, 2023, Plaintiffs Damon Barnes and Jacey Houseton were shopping at a Winco shopping market in Lancaster, California. *See* Defendant's Statement of Uncontroverted Facts ("DF") ¶ 1, ECF No. 214. Barnes is a middle-aged Black man, and Houseton is a middle-aged Black woman. Plaintiffs' Undisputed Material Facts ("PF") ¶ 1, ECF No. 226-1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-06887-SVW-MRW | Date | January 29, 2025 |
|---|---|---|---|
| Title | *Jacy Houseton et al. v. Trevor Kirk et al.* | | |

    After a disputed series of events, a store supervisor at the Winco called 911 to report that a female Black adult wearing a black sweater and grey leggings and a male Black adult wearing a blue cowboy hat, green shirt, and jeans were assaulting and spitting on the store's loss preventing staff. DF ¶ 1. The 911 call led to the initiation of a 211 robbery call. Deputy Felipe Alejandre was assigned to handle the call, while Deputy Trevor Kirk was assigned to assist. DF ¶ 2.

    When Deputy Alejandre arrived at the Winco store, he spoke with two Winco employees regarding the 911 call. The first employee told Alejandre that one of the suspects spit in the face of another employee. DF ¶ 4. What the second employee told Alejandre is disputed. Defendant contends that the second employee pointed at a black Toyota Camry and told him that the people in that vehicle were the people who spit at an employee. DF ¶ 4. Plaintiff disputes this characterization and contends that Barnes and Houseton were not identified as the subjects of the 911 call. Plaintiff's Response to DF ¶ 4, ECF No. 226-1.

    After speaking with the employees, Deputy Alejandre initiated a traffic stop of the black Toyota Camry in which Barnes and Houseton were sitting, which was parked in the Winco parking lot. DF ¶ 5. To do this, Deputy Alejandre approached the black Toyota Camry with his car and turned on his forward facing red and blue lights. *Id.* In response, Plaintiff Barnes exited the vehicle through the front passenger seat door with a piece of cake in his hand. DF ¶ 5.

    Deputy Alejandre instructed Barnes to place his hands on the hood of his patrol vehicle, but Barnes did not do so. DF ¶ 6. Deputy Alejandre then told Barnes to take a seat on the ground, which Barnes also did not do. Finally, Deputy Alejandre asked Barnes to sit down on a nearby rock, which Barnes did. DF ¶ 7. Plaintiff disputes whether Barnes ever heard Alejandre's first two commands. Plaintiff's Response to DF ¶¶ 6-7.

    At this point, Deputy Kirk arrived on the scene. DF ¶ 8. The two deputies then approached Barnes and told him they were going to conduct a pat down of his person. DF ¶ 9. Barnes replied that he did not have anything on him. *Id.* The two deputies then grabbed Barnes' arms, placed them behind his back, and

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-06887-SVW-MRW | Date | January 29, 2025 |
|---|---|---|---|
| Title | *Jacy Houseton et al. v. Trevor Kirk et al.* | | |

handcuffed him. DF ¶¶ 9-12. During the handcuffing process, Barnes asked "what have I done?" and also stated that he could "bust through this." DF ¶ 10. Defendant contends that Barnes also exhibited "active resistance." DF ¶ 11. Plaintiff disputes this characterization. Video footage from Deputy Alejandre's body camera shows that Barnes does not try to escape the Deputies while they are handcuffing him. Exhibit 2, Deputy Alejandre's Body Cam Footage, 1:30-2:15, ECF No. 213-1. The video seems to show some level of passive resistance from Barnes during the handcuffing—i.e., the tensing of his arms, some slight movement of his body—but that is the extent of Barnes' resistance evident from the video. *See id.*

After the deputies handcuffed Barnes, Jacy Houseton arrived and began to film the deputies with her cell phone. DF ¶ 13. Deputy Kirk then left Barnes and approached Houseton. *Id.* At this point, Defendant contends that Houseton was "resistant and assaultive." DF ¶ 14. Plaintiff contests this characterization. Plaintiff's Response to DF ¶ 14. Deputy Kirk's Body Cam Footage shows Houseton briefly raise her right arm as Kirk approaches, but it is unclear whether she did so to strike Deputy Kirk or to gesture at him to "stop" and not come any closer. Exhibit 3, Deputy Kirk's Body Cam Footage, 0:58-1:04, ECF No. 213-1. Deputy Kirk then grabbed Houseton's upper body and threw her to ground. *Id.* at 1:04-1:08. Over the next 30 seconds, Deputy Kirk pinned Houseton to the ground, threatened to punch her in the face, and sprayed her face with pepper spray. *Id.* at 1:00-1:35. Houseton did not offer any meaningful resistance during this interaction. *See id.*

At the same time as Deputy Kirk approached Houseton, Deputy Alejandre told Barnes, who was handcuffed, to sit down. DF ¶ 15. When Barnes did not immediately comply, Alejandre used Barnes' arms to perform a takedown of Barnes and force him to the ground on top of a small bush. DF ¶¶ 15-16. Defendant contends that the takedown was necessary because Barnes was resisting sitting down and was being "assaultive." *Id.* Plaintiff disputes these characterizations.

It is undisputed that Deputy Alejandre then used some level of force to keep Barnes on the ground for around 1 minute. DF ¶ 17; PF ¶ 8; Exhibit 2, ECF No. 213-1. The specifics of how Barnes was held down, however, are disputed. Defendant claims that he "placed his hands on Barnes' chest area and held him down" face up. DF ¶ 17. Plaintiff states that Alejandre threw Barnes to the ground "face first" and

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-06887-SVW-MRW | Date | January 29, 2025 |
|---|---|---|---|
| Title | *Jacy Houseton et al. v. Trevor Kirk et al.* | | |

then "used his body weight and put his knee on Barnes' back while Barnes was face down." PF ¶ 8. Video footage shows that Alejandre forced Barnes to the ground face up. Exhibit 2, 2:15-2:45. It is unclear from the footage whether Alejandre used his body to keep Barnes on the ground, and if he did, whether he used his arm or his knee. *See id.* During this altercation, Barnes tells Alejandre multiple times that he is not going to fight him. *Id.*

Deputy Alejandre forced Barnes to the ground within 10 feet or so of Deputy Kirk's altercation with Houseton. *See* Exhibit 2. It is unclear from the video footage whether Alejandre had a clear view of Kirk and Houseton. *See id.* Alejandre claims he did not witness Deputy Kirk spray Houseton in the face. DF ¶ 20. Plaintiff disputes that contention. Plaintiff's Response to DF ¶ 20.

**B. Procedural History, Including the Defendant's Request for Admissions**

Plaintiffs (Barnes and Houseton) filed the present suit on August 22, 2023. ECF No. 1. Plaintiffs alleged various causes of action: (1) a 42 U.S.C. § 1983 claim against Kirk and Alejandre for violating their Fourth Amendment rights, (2) a *Monell* claim against the County and Sheriff Luna, (3) a state law battery claim against Kirk and Alejandre, (4) a negligence claim against Kirk, Alejandre, the County, and Sheriff Luna, (5) a claim against Kirk and Alejandre for violation of California's Bane Act; and (6) a Torts-in-Essence claim against Deputies Kirk and Alejandre. First Am. Compl. ¶¶ 17–51, ECF No. 108.

On April 15, 2024, the Court bifurcated Plaintiffs' *Monell* claim. ECF No. 114. On May 6, 2024, the Court temporarily stayed the case to allow a related criminal case against Deputy Kirk to develop. ECF No. 166. On June 20, 2024, the Court further bifurcated the case by bifurcating Plaintiffs' state law claims. ECF No. 179. This left only one remaining claim for the Court to consider: Plaintiffs' Fourth Amendment excessive force claim. On September 18, 2024, the Court lifted the stay and set trial for February 18, 2025. ECF No. 185.

On November 1, 2024, the parties stipulated to dismiss Defendants County of Los Angeles and Sheriff Robert Luna from the case. ECF No. 187. This left Deputies Kirk and Alejandre as the only

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-06887-SVW-MRW | Date | January 29, 2025 |
|---|---|---|---|
| Title | *Jacy Houseton et al. v. Trevor Kirk et al.* | | |

remaining defendants.

On January 6, 2025, Defendant Alejandre moved for summary judgment. ECF No. 213. Plaintiff Barnes opposed. ECF No. 226.

## II. Legal Standard

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the factual record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its initial burden, the non-moving party must demonstrate with admissible evidence that genuine issues of material fact exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56 . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). "On an issue as to which the nonmoving party will have the burden of proof . . . the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Id.*

A material fact for purposes of summary judgment is one that "might affect the outcome of the suit" under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although a court must draw all inferences from the facts in the non-movant's favor, *id.* at 255, when the non-moving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, [the] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-06887-SVW-MRW | Date | January 29, 2025 |
|---|---|---|---|
| Title | *Jacy Houseton et al. v. Trevor Kirk et al.* | | |

### III. Discussion

While Defendant moves for summary judgment on all of Plaintiffs' claims against him, the Court bifurcated all of Plaintiffs' claims except for their Fourth Amendment excessive force claim. The Court will therefore only evaluate Defendant's motion as it pertains to excessive force.

#### A. Fourth Amendment

Plaintiffs bring Section 1983 claims based on three alleged violations of the Fourth Amendment: (1) Defendant's use of excessive force against Barnes; (2) Defendant's role as an integral participant of Deputy Kirk's excessive force against Houseton; and (3) Defendant's failure to intervene to prevent Deputy Kirk from using excessive force against Houseton. The Court will address each in turn.

##### 1. Excessive Force Against Barnes

"In evaluating a Fourth Amendment claim of excessive force, we ask 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them.'" *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (quoting *Graham v. O'Connor*, 490 U.S. 386, 397 (1989)). "In assessing the objective reasonableness of a particular use of force, we consider: (1) 'the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted,' (2) 'the government's interest in the use of force,' and (3) the balance between 'the gravity of the intrusion on the individual' and 'the government's need for that intrusion.'" *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (quoting *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011)). "Because the reasonableness standard 'nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'" *Torres v. City of Madera*, 648 F.3d 1119, 1125 (9th Cir. 2011) (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)).

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-06887-SVW-MRW | Date | January 29, 2025 |
|---|---|---|---|
| Title | *Jacy Houseton et al. v. Trevor Kirk et al.* | | |

### a) Severity of the Intrusion

"The first step of the excessive force inquiry requires [courts] to assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted." *Lowry*, 858 F.3d at 1256. Courts evaluate both the "actual harm" and "the risk of harm" created by "the type and amount of force used[.]" *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151-52 (9th Cir. 2022). "The greater the risk of harm and the actual harm involved, the greater the governmental interest must be to justify the use of force." *Sabbe v. Washington Cnty. Bd. of Comm'rs*, 84 F.4th 807, 821 (9th Cir. 2023).

The Ninth Circuit recognizes that an officer's use of body weight to compress a suspect's chest is "capable of causing death or serious injury." *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056-57 (9th Cir. 2003). Moreover, even if "the officers' conduct did not cause serious injury or death[,] [that] does not make their use of force non-lethal; 'it is the risk of that result that turns the screw.'" *Dominguez v. Cnty. of Los Angeles*, No. 21-cv-6369-FMO, 2024 WL 3914873, at *8 (C.D. Cal. Aug. 15, 2024).

Here, it is undisputed that Defendant grabbed Barnes' arms, handcuffed him, used a take-down maneuver to force him to the ground, and used some amount of force to keep him there for about a minute. DF ¶¶ 15-16. While Defendant claims that he used his hand to keep Barnes on the ground, Plaintiff contends that Defendant pinned Barnes using his knee and bodyweight. PF ¶ 8. How exactly Defendant kept Barnes on the ground is not clear from the available video footage. Barnes would therefore have to prove this point through witness testimony, presumably the testimony of Barnes and Houseton. Given that the video evidence is unclear, and viewing the evidence available in the light most favorable to the non-moving party, a reasonable juror could find for Barnes on this issue, and find that Defendant used his knee and bodyweight to pin him to the ground.

A reasonable juror, however, could not find for Barnes on his other contention—that Defendant threw Barnes to the ground face first and pressed his knee on Barnes' back. Defendant Alejandre's body cam footage clearly shows that he forces Barnes to the ground back first, with his head facing up. So any

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-06887-SVW-MRW | Date | January 29, 2025 |
| Title | *Jacy Houseton et al. v. Trevor Kirk et al.* | | |

potential use of Alejandre's knee to pin Barnes to the ground would have to be to the front side of Barnes' torso, not his back. No reasonable juror could make a contrary finding. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (explaining that when there is video evidence of the incident giving rise to the excessive force claim, a court must "view[] the facts in the light depicted by the videotape").

### b) Government's Interest in the Use of Force

The second step in the excessive force analysis involves "evaluat[ing] the government's interest in the use of force." *Lowry*, 858 F.3d at 1257. This requires the court to assess "three primary factors: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* Courts also consider other factors, such as "whether proper warnings were given and the availability of less intrusive alternatives to the force employed. *Id.* at 1259.

#### i. The Severity of the Crime at Issue

Courts have applied two approaches when considering the severity of the crime in an excessive force analysis. Under one approach, "a particular use of force would be more reasonable, all other things being equal, when applied against a felony suspect than when applied against a person suspected of only a misdemeanor." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1136 (9th Cir. 2019). Under the other approach, courts "use[] the severity of the crime at issue as a proxy for the danger a suspect poses at the time force is applied." *Id.*

Here, it is a bit unclear what crime Barnes was suspected of committing. The 911 call from the Winco employee stated that two individuals matching Barnes and Houseton's description were assaulting and spitting on the store's loss prevention staff. DF ¶ 1. This account was allegedly corroborated by a Winco employee that Defendant spoke with upon arriving at the scene, who told Defendant that Barnes and Houseton (who were in the black Toyota Camry at this point) spit on another Winco employee. Slightly complicating this picture, however, is the fact that the police initiated a 211 robbery call after

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-06887-SVW-MRW | Date | January 29, 2025 |
|---|---|---|---|
| Title | *Jacy Houseton et al. v. Trevor Kirk et al.* | | |

receiving the 911 call. DF ¶ 2. Regardless, whether the suspected crime at issue was spitting on a grocery store employee or stealing a few food items, the crime would be a nonviolent misdemeanor that weighs against the use of force. *See Bryan v. MacPherson*, 630 F.3d 805, 828-29 (9th Cir. 2010) (holding that plaintiff's three misdemeanors "provide[d] little, if any, basis for [the defendant's] use of physical force").

### ii. Whether Plaintiff Posed an Immediate Threat

This second factor, whether Barnes posed an immediate threat to the safety of the officers or others, "is the most important" of the three factors. *Lowry*, 858 F.3d at 1258. When evaluating this factor, courts "focus on the immediate threat of harm," "that is, we consider the danger a suspect poses at the time force is applied." *Andrews v. City of Henderson*, 35 F.4th 710, 716 (9th Cir. 2022).

Here, there is little evidence that Barnes posed an immediate threat. Barnes does not make any aggressive statements to Alejandre or Kirk. He also does not make any aggressive movements or otherwise indicate that he may act violently toward either officer. And while Barnes does not initially comply with Defendant's orders to put his hands on the patrol vehicle or sit on the ground, Barnes does ultimately comply with Defendant's direction to sit on a nearby rock. Regardless, such minimal resistance is a "form of passive noncompliance that creates a minimal disturbance and indicates no threat, immediate or otherwise, to the officer or others[.]" *Young*, 655 F.3d at 1165 (finding that a suspect who insisted on sitting on the curb rather than get back into his car did not pose an immediate threat).

In fact, given the circumstances, Barnes acted surprisingly calm. For example, when Defendant and Kirk handcuffed Barnes without any explanation, Barnes did not try to run or fight back. At worst, Barnes passively resisted by tensing his arms and stating "I can bust through this." But this is a relatively reasonable response given that the officers' grabbed Barnes' arms and handcuffed him without any explanation. Barnes acted similarly calm when Defendant forced him to the ground. Barnes did not fight back. Rather, he explained multiple times that he was not trying to fight Defendant.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-06887-SVW-MRW | Date | January 29, 2025 |
|---|---|---|---|
| Title | *Jacy Houseton et al. v. Trevor Kirk et al.* | | |

### iii. Whether Plaintiff was Actively Resisting

The third and final factor, whether Barnes was actively resisting or attempting to evade arrest, comes into play "when an officer is facing a suspect and can observe whether that suspect is complying or resisting." *Lowry*, 858 F.3d at 1258. "[T]he level of force an individual's resistance will support is dependent on the factual circumstances underlying that resistance." *Id.* Generally, "where the suspect passively resists arrest, a lesser degree of force is justified compared to situations in which the suspect actively resists arrest." *Id.*

Importantly, "passive noncompliance . . . will not, without more, give rise to a government interest in the use of significant force." *Young*, 655 F.3d at 1165. "[F]ailure to immediately comply with an officers' orders" is an example of passive resistance that does not "justif[y] the application of a non-trivial amount of force." *Id.*

Here, there is little evidence of Barnes actively resisting Defendant. Yes, Barnes did not initially comply with Defendant's orders to put his hands on the hood of Defendant's vehicle or sit on the ground, but such noncompliance is passive resistance, not active resistance. *See Young*, 655 F.3d at 1165 (describing "disobeying a peace officer's order" as "passive noncompliance"). And while Defendant contends that Barnes actively resisted being handcuffed as well as Defendant's efforts to make Barnes sit down, these are disputed facts. Barnes contends the opposite—that he did not resist Defendant at all. The available video footage is favorable to Barnes' position; it shows Barnes slightly flexing his arms while being handcuffed but no other signs of resistance. In short, viewing the evidence in the light most favorable to Barnes, a reasonable jury could certainly find that Barnes did not actively resist Defendant.

### c) The Balance of Interests

The final step of the excessive force inquiry is to balance "the gravity of the intrusion on [the plaintiff's] Fourth Amendment rights against the [government's] need for that intrusion." *Lowry*, 858 F.3d at 1260. Here, the gravity of the intrusion on Barnes' Fourth Amendment rights—or, put more simply, the

|  | : |
|---|---|
| Initials of Preparer | PMC |

Case 2:23-cv-06887-SVW-SSC   Document 240   Filed 01/29/25   Page 11 of 16   Page ID #:3419

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-06887-SVW-MRW | Date | January 29, 2025 |
|---|---|---|---|
| Title | *Jacy Houseton et al. v. Trevor Kirk et al.* | | |

amount of force used against Barnes—was moderate. Barnes was not beaten or tased. But he was forcibly taken to the ground and pinned down (potentially by the knee and bodyweight of Defendant if Plaintiff's evidence is to be believed) for close to a minute. While not as severe as other excessive force cases, it is not a trivial amount of force.

Conversely, viewing the evidence in the light most favorable to Barnes, the government's need for force in this situation was non-existent. A reasonable jury could rationally find that there was no need to force Barnes to the ground at all given that he was not attempting to escape, was not verbally abusive, and largely acquiesced to being handcuffed.

In sum, a reasonable jury could find that the force Defendant used against Barnes outweighed the government's need for that force. In other words, a reasonable jury could find that Defendant's force was not objectively reasonable, and thus violated Barnes' Fourth Amendment rights.

### 2. Integral Participant

Alternatively, Plaintiff argues that Defendant violated the Fourth Amendment by being an integral participant in Deputy Kirk's use of excessive force against Houseton. The Court disagrees.

"A person subjects another to the deprivation of a constitutional right, within the meaning of Section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark County Sch. Bd. of Trus.*, 479 F.3d 1175, 1183 (9th Cir. 2007). "[E]ither integral participation or personal involvement" in the alleged constitutional violation is required to establish a Section 1983 violation. *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002). "[A]n actor may be deemed to have caused a plaintiff to be subjected to a constitutional violation, and thus to be an integral participant in the violation, only if (1) the defendant knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant set in motion a series of acts by others which the defendant knew or reasonably should have known would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-06887-SVW-MRW | Date | January 29, 2025 |
|---|---|---|---|
| Title | *Jacy Houseton et al. v. Trevor Kirk et al.* | | |

cause others to inflict the constitutional injury." *Peck v. Montoya*, 51 F.4th 877, 891 (9th Cir. 2022).

Defendant does not fit these criteria. First, there is no evidence that Defendant Alejandre knew about and acquiesced in Deputy Kirk's use of force towards Houseton as part of a common plan. The two deputies approached Barnes and Houseton to investigate an alleged assault/burglary; there was no "common plan" to use excessive force.

Second, Defendant Alejandre did not set into motion a series of acts by Deputy Kirk that he knew or reasonably should have known would lead to Deputy Kirk's use of force on Houseton. Yes, video footage shows Defendant Alejandre, who was the lead officer at the scene, gesturing towards Houseton before Deputy Kirk goes to approach her. But Defendant could not have reasonably known that telling Deputy Kirk to approach Houseton would cause Kirk to throw Houseton to the ground, threaten to punch her, pin her down, and pepper spray her in the face. Indeed, there is no reasonable expectation that when telling a fellow officer to approach a subject, that that officer will use excessive force.

Accordingly, the Court holds that, even viewing the evidence in the light most favorable to Plaintiff, that Defendant Alejandre was not an integral participant in Deputy Kirk's use of force.

### 3. Failure to Intervene to Prevent the Use of Excessive Force

"Police officers have a duty to intercede when their fellow officers violate the constitutional right of a suspect or other citizen." *Cunningham v. Gates*, 299 F.3d 1271, 1289 (9th Cir. 2000). That said, "officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id.*

Here, Plaintiff alleges that Defendant failed to intervene to prevent Deputy Kirk's use of excessive force against Houseton. Whether this claim can survive summary judgment first depends on whether a reasonable jury could find that Deputy Kirk used excessive force against Houseton. Video evidence shows that Deputy Kirk threw Houseton, an unarmed middle-aged woman, to the ground, pinned her there, threatened to punch her, and used OC spray on her face. *See* Exhibit 3, Deputy Kirk's Body Cam Footage,

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-06887-SVW-MRW | Date | January 29, 2025 |
|---|---|---|---|
| Title | *Jacy Houseton et al. v. Trevor Kirk et al.* | | |

ECF No. 213-1. This video evidence, combined with the fact that Houseton was suspected of committing only minor crimes and did not show obvious signs of aggression towards Deputy Kirk, is sufficient for a reasonable jury to find that Deputy Kirk used excessive force.

With that established, the next question is whether a reasonable jury, viewing the evidence in the light most favorable to Plaintiff, could find that Defendant had an opportunity to intervene to prevent Deputy Kirk's use of force but failed to do so. Deputy Kirk's use of force lasted roughly 30 seconds. This included him approaching her, throwing her to the ground, pinning her to the ground, threatening her, and using OC spray. During this time, Defendant is forcing Barnes to the ground and pinning him there.

Defendant contends that he did not have the opportunity to intervene because he did not witness Deputy Kirk use force against Houseton. DF ¶¶ 19-20. And, even if he did witness Deputy Kirk's actions, he could not have intervened because he was occupied with Barnes, who, according to Defendant, was physically resisting him. Abandoning Defendant would have thus been irresponsible, as an uncontained Barnes would have put both deputies at risk.

Plaintiff, for his part, contests these characterizations. While he seems to admit that Defendant did not see Kirk's initial take down of Houseton, he maintains that Defendant did see Kirk pinning her down and using OC spray on her face. Plaintiff's Response to DF ¶¶ 19-20. Barnes also contends that he was not physically resisting Defendant and did not pose any risk if Defendant left Barnes alone to intervene on Houseton's behalf.

The conflict between Defendant and Plaintiff's representation of the scene is a genuine dispute of material fact that precludes summary judgment on this issue. A jury will have to decide whether Defendant witnessed Kirk's use of force and if so, whether it was reasonable for Defendant to decline to intervene.

### B. Qualified Immunity

Given that the Court finds that a reasonable jury could find that Defendant violated the Fourth

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-06887-SVW-MRW | Date | January 29, 2025 |
|---|---|---|---|
| Title | *Jacy Houseton et al. v. Trevor Kirk et al.* | | |

Amendment, the next question is whether Defendant is shielded by qualified immunity. "The doctrine of qualified immunity shields police officers from § 1983 liability unless (1) the officers 'violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time"' of the violation." *Perez v. City of Fresno*, 98 F.4th 919, 924 (9th Cir. 2024). A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1319 (9th Cir. 1995).

Relevant to this case, "[t]he right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013). For example, in *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003), the court held that the police used excess force when, during a search of the plaintiff's home, an officer "grabbed [the plaintiff], forcibly threw her to the ground, and twisting her arms, handcuffed her." Similarly, in *Bushell-McIntyre v. City of San Jose*, 252 F. App'x 810, 812 (9th Cir. 2007), the Ninth Circuit held that qualified immunity did not apply to an officer who shoved the plaintiff outside, slammed her against a car, and applied a pain compliance control hold, when the plaintiff had been "calm, sober and compliant." These cases reflect the well-established principle "that force is only justified when there is a need for force." *Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007).

Also relevant to the facts present here is Ninth Circuit case law concerning the use of an officer's knees and bodyweight to pin a defendant to the ground. In *Drummond ex rel Drummond v. City of Anaheim*, 343 F.3d 1052, 1054-55, 1062 (9th Cir. 2003), the Ninth Circuit held that "kneeling on the back and neck of a compliant detainee, and pressing the weight of two officers' bodies on him even after he complained he was chocking and in need of air violates clearly established law." Likewise, in *Abston v. City of Merced*, 506 F. App'x 650, 653 (9th Cir. 2013), the Ninth Circuit denied qualified immunity to an officer who applied his body weight to a prone person for one minute and seven seconds even though the person was "in no position to offer any meaningful resistance."

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-06887-SVW-MRW | Date | January 29, 2025 |
|---|---|---|---|
| Title | *Jacy Houseton et al. v. Trevor Kirk et al.* | | |

    Here, viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that: (1) Barnes engaged in, at worst, passive resistance; and (2) Defendant used "non-trivial force" by using his knee and bodyweight to pin Barnes against the ground. *See Drummond*, 343 F.3d at 1062. Or, put more simply, a reasonable jury could find that Barnes behavior presented no "need for force." *See Blankenhorn*, 485 F.3d at 480. Defendant's use of non-trivial force in such a situation is clearly established as a Fourth Amendment violation, and thus not subject to the protection of qualified immunity. *See Gravelet-Blondin*, 728 F.3d at 1093 ("The right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established"); *Blankenhorn*, 485 F.3d at 480 ("[F]orce is only justified when there is a need for force.").

    To be sure, the use of officers' knees in *Drummond* is more severe than the alleged use in this case. But these differences notwithstanding, *Drummond* still stands for the proposition that pinning a suspect on the ground with one's knee and bodyweight often constitutes excessive force. *See Scott v. Smith*, 109 F.4th 1215, 1223 (9th Cir. 2024) ("Our precedent establishes that the use of bodyweight compression on a prone individual can cause compression asphyxia.").

    Moreover, two police officers pinning a plaintiff down with their knees is not the bar for excessive force. In *Erath*, the Ninth Circuit found that just forcibly throwing the plaintiff to the ground and twisting her arms constituted excessive force given that the plaintiff was not a threat to any police officers. 342 F.3d at 1061. Here, as in *Erath*, a reasonable jury could find that Barnes was not a threat to any police officers. *See id.* Accordingly, that the police officer in *Erath* forcing the plaintiff to the ground constituted excessive force renders it well-established that Defendant forcing Barnes to the ground would likewise violate the Fourth Amendment. *See id.*

    In sum, a jury could reasonably find that Plaintiff did not engage in active resistance and that Defendant used non-trivial force against him. This would constitute a clearly established Fourth Amendment violation that would bar application of qualified immunity. *See Gravelet-Blondin*, 728 F.3d at 1093. Accordingly, the Court cannot grant summary judgment on qualified immunity grounds.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-06887-SVW-MRW | Date | January 29, 2025 |
|---|---|---|---|
| Title | *Jacy Houseton et al. v. Trevor Kirk et al.* | | |

### IV. Conclusion

For the foregoing reasons, the Court DENIES Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

| | : |
|---|---|
| Initials of Preparer | PMC |